## COMMONWEALTH *vs.* CHARLES A. NICHOLS.

A shopkeeper is liable criminally for an unlawful sale of spiritous liquor in his shop, made with his assent, by a servant or agent employed in his business : But an unlawful sale by the servant or agent is only *primâ facie* evidence of the assent thereto by the shopkeeper, and of his liability to punishment therefor.

AT the trial of the defendant, in the court of common pleas, before *Cushing*, J. upon an indictment on Rev. Sts. *c.* 47, § 2, for selling spiritous liquor without license, a witness testified that he called at a grocery shop in Lowell, kept by the defendant ; that the defendant was not present, but that he found a man there who sold him a glass of spiritous liquor, to be used in the shop ; but that he did not know whether the man was in the defendant's employ or not. Another witness testified that he knew the shop kept by the defendant, and that the defendant had a clerk in his employ ; that he (the witness) once went to said shop, to purchase groceries, when the clerk alone was there, and that, after he had made his purchases, he went to a cask, drew a glass of liquor, and drank it, but did not pay for it, and was not charged for it, to his knowledge. On cross-examination, this witness said he had heard the defendant expressly forbid his clerk to sell any spiritous liquor in a less quantity than twenty eight gallons.

The defendant's counsel requested the judge to instruct the jury, that if they doubted, upon the whole evidence, whether these sales were made by the authority of the defendant, or by his consent, they must acquit him. But the judge declined so to do, and instructed the jury, that if they were satisfied, beyond a reasonable doubt, that the sales were made by the defendant, or any person in his employ, and in his shop, they would be warranted in finding him guilty. The jury found the defendant guilty, and he alleged exceptions to the instructions.

*B. F. Butler*, for the defendant.

*Mellen*, for the Commonwealth.

Dewey, J. The question here raised as to the liability of the principal to be punished criminally for the acts of his agent or servant, in which he does not directly participate personally, is certainly not free from difficulty. As to civil liabilities, a broader and more general principle of responsibility applies, and the master or principal may be held to answer in damages for default and misdoings with which he had no other connexion than that which arises from the fact that the injury was occasioned by one employed in his service. As a general rule, something beyond this is necessary to charge the master criminally for acts done by the servant. There must be such a direct participation in the act, or such assent and concurrence therein, as would involve him morally in the guilt of the action. Hence the cases are comparatively rare, and may be considered as exceptions to the general rule, where by legal rules a party is charged criminally for acts of his servant done without his knowledge and assent. The case of a bookseller, or publisher of a newspaper, is to some extent one creating such liability ; to what precise extent is, perhaps, yet an unsettled question. *Rex v. Almon*, 5 Bur. 2686, a leading case on that subject, only carried the doctrine so far as to hold that such relation to the act of sale by a servant was *primâ facie* evidence to establish the liability of the party, but was not conclusive and might be controlled. It was said by Lord Mansfield that he might avoid the effect of

it by showing " that he was not privy nor assenting to it, nor encouraging it." So also it is said that the defendant, in such cases, may rebut the presumption by showing that the libel was sold contrary to his orders, or under circumstances negativing all privity on his part. 2 Stark. on Slander, (2d ed.) 34.

The general rule, however, has been stated, 1 think, somewhat more broadly as to the liability of booksellers and publishers, respecting all publications issued from their establishments in the regular course of business; and they have been held answerable criminally in such cases, although the particular act of sale or publication was done without their knowledge. 1 Hawk. *c.* 73, § 10. *Rex* v. *Walter,* 3 Esp. R. 21. In the recent case of *Rex* v. *Gutch & others,* 1 Mood. & Malk. 437, where it appeared that Gutch was residing at a distance, was in ill health, and not interfering with the conducting of the paper, the rule is thus stated : " A person who derives profit from, and who furnishes means for carrying on the concern, and intrusts the conduct of the publication to one whom he selects, may be said to cause to be published what actually appears, and ought to be answerable, although you cannot show that he was individually concerned in the act of publication." But in that case, Lord Tenterden, in delivering the opinion of the court, says, " I do not mean to say, that some possible case may not occur, in which he would be exempt ; but generally speaking, he is answerable."

Another class of cases, where the liability of the master for the criminal acts of the servant has been recognized, has arisen under revenue laws and police regulations. In *Attorney General* v. *Siddon,* 1 Crompt. & Jerv. 220, and 1 Tyrw. 41, (a case of concealing smuggled goods,) it was held that a trader is liable to a penalty for the illegal act of a servant, done in the conduct of his business, with a view to protect the smuggled goods, though the master be absent at the time the act is done. It seems here again to have been held only *primâ facie* evidence, and that the master might have introduced evidence for the purpose of rebutting such *primâ facie* case.

In *Attorney General* v. *Riddle,* 2 Crompt. & Jerv. 493, and 2 Tyrw. 523, which was an information under *St.* 1 Geo. 4, *c.* 58, prohibiting the delivery of paper not tied up and labelled, and requiring, before it is removed from the place of manufacture, that it be enclosed in a labelled wrapper, the evidence was, that the wife of the defendant, having authority from him to do certain acts in his trade of a paper manufacturer, pledged paper which had no wrapper or label on it, the court held that the authority of the wife was a question for the jury, and that it ought to have been left to the jury to decide whether or not the acts of the wife, under the circumstances stated, were done by the authority of the husband.

It seems to us that the case of a sale of liquors prohibited by law, at the shop or establishment of the principal, by an agent or servant usually employed in conducting his business, is one of that class in which the master may properly be charged criminally for the act of the servant.   But in looking at the question presented by the bill of exceptions in the present cases, and considering what should be stated as the rule as to the responsibility of the principal or master in such cases, the court have come to the opinion that the law was stated too strongly, upon that point, against the defendant, inasmuch as the defendant, under the instructions given, might have been found guilty of the charge in the indictment, if a sale had been made in his shop by any person in his employment, without any reference to the circumstances under which the sale was made, and although against the will and in contravention of the orders of the defendant.

We think that a sale by the servant, in the shop of the master, is only *primâ facie* evidence of such sale by the master as would subject him to the penalty for violating the statute forbidding the sale of spiritous liquors without license ; that the relation of these parties, the fact that the defendant was in possession of the shop and was the owner of the liquor, and that the sale was made by his servant, furnish strong evidence to authorize and require the jury to find the defendant guilty.   But we cannot say that no possible case can arise in

which the inference from all these facts may not be rebutted by other proof. Unexplained, they would be sufficient to convict the party. So too it should be understood that merely colorable dissent, or a prohibition not to sell, however publicly or frequently repeated, if not made *bonâ fide*, will not avail. But if a sale of liquor is made by the servant without the knowledge of the master, and really in opposition to his will, and in no way participated in, approved or countenanced by him, and this is clearly shown by the master, he ought to be acquitted.

*New trial granted.*